UNITED STATES of America

v.

THIRTY–SIX THOUSAND, ONE HUNDRED AND TWENTY–FIVE DOLLARS ($36,125.00) IN U. S. CURRENCY, Thirty-Five Dollars ($35.00) In Colombian Currency, and Thirty-Three Dollars ($33.00) In Belize Currency.*

Civ. A. No. 79–1783.

United States District Court,
E. D. Louisiana.

April 1, 1980.

---

\* Affirmed by unpublished per curiam May 16, 1981. (5th Cir. No. 80–3281).

Douglas M. Browning, Asst. Regional Counsel, U. S. Customs Service, New Orleans, La., for plaintiff.

John A. Stassi, II, Stassi & Rausch, New Orleans, La., for claimants/defendants.

## REASONS FOR JUDGMENT

DUPLANTIER, District Judge.

On October 27, 1977, David L. Albrecht arrived at New Orleans International Airport from Honduras, Central America. In response to the question: "Are you carrying over $5000.00 in coin, currency, or monetary instruments?" on the Customs Declaration form signed by him, Albrecht answered "No". He was arrested by U. S. Customs Agents after the discovery by them in his luggage and on his person of over $36,-000.00 in U. S. Currency and about $70.00 of Colombian and Belize currency.

The money was seized by the United States and is the subject of this forfeiture proceeding. The case was tried to the court on stipulated facts. Claimants do not contest the validity of the arrest or the seizure. Their sole contention is that by reason of the delay involved, the government's right of forfeiture has been lost. The government's position is that the proceedings were filed promptly and that any delay was justified by the pendency of further criminal investigations concerning Albrecht. Alternatively, the government contends that Albrecht in any event cannot urge the delay as a defense to the forfeiture.

The court orders the forfeiture for the following reasons.

Albrecht was arrested for violation of 31 U.S.C. § 1101(a)(1)(B) and § 1058.[1] The currency was seized pursuant to 31 U.S.C. § 1102.[2] On December 15, 1977, Albrecht was indicted by the grand jury for violation of 18 U.S.C. § 1001.[3] On March 3, 1978, Albrecht entered a plea of guilty to a superseding bill of information charging him with violation of 31 U.S.C. § 1101(a)(1)(B) and § 1058. The imposition of sentence was suspended and Albrecht was placed on supervised probation for a period of three years and fined $1,000.00.[4] The original indictment was dismissed.

This suit was filed on May 17, 1979, approximately eighteen months after the seizure of the money and fourteen months

---

1. § 1101. Reports
   Persons required to file
   (a) Except as provided in subsection (c) of this section, whoever, whether as principal, agent, or bailee, or by an agent or bailee, knowingly—
   (1) transports or causes to be transported monetary instruments—
   (A) from any place within the United States to or through any place outside the United States, or
   (B) to any place within the United States from or through any place outside the United States, or
   (2) receives monetary instruments at the termination of their transportation to the United States from or through any place outside the United States
   in an amount exceeding $5,000 on any one occasion shall file a report or reports in accordance with subsection (b) of this section.
   § 1058. Criminal penalty
   Whoever willfully violates any provision of this chapter or any regulation under this chapter shall be fined not more than $1,000, or imprisoned not more than one year, or both.

2. § 1102. Forfeiture
   (a) Any monetary instruments which are in the process of any transportation with respect to which any report required to be filed under section 1101(a) of this title either has not been filed or contains material omissions or misstatements are subject to seizure and forfeiture to the United States.
   (b) For the purpose of this section, monetary instruments transported by mail, by any common carrier, or by any messenger or bailee, are in process of transportation from the time they are delivered into the possession of the postal service, common carrier, messenger, or bailee until the time they are delivered into or retained in the possession of the addressee or intended recipient or any agent of the addressee or intended recipient for purposes other than further transportation within, or across any border of, the United States.

3. § 1001. Statements or entries generally
   Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

4. The payment of the fine was suspended pending the final resolution of the forfeiture proceedings by the U.S. Customs Service.

after the entry of Albrecht's guilty plea. Claimants[5] contend that the delay in the institution of these proceedings violated the duty imposed upon the government by 19 U.S.C. §§ 1602–1604 to institute forfeiture proceedings promptly and constituted a taking of property without due process of law.

The first issue presented is whether 19 U.S.C. §§ 1602–1604[6] are applicable to seizures under 31 U.S.C. § 1102. In *Ivers v. United States*, 581 F.2d 1362 (9th Cir. 1978) the Ninth Circuit was presented with the same question in a factual context similar to the present case. However, the court in *Ivers* never decided whether those sections were applicable to seizures under 31 U.S.C. § 1102 due to the fact that the only delay of any significance occurred during that stage of the proceedings covered by § 1603 which until its recent amendment imposed no obligation of promptness. We agree with the *Ivers* court's conclusion that the duty of customs authorities to act expeditiously in post-seizure forfeiture proceedings is an obligation imposed independently by the Constitution and that therefore it is unnecessary to decide the applicability *vel non* of 19 U.S.C. §§ 1602–1604.

We also adopt the following from the *Ivers* opinion at pp. 1367–68.

When a statute provides for the forfeiture of property as a consequence of the commission of an unlawful act, "the forfeiture takes effect immediately upon the commission of the act," constituting "a statutory transfer of the right to the United States at the time the offense is committed." *United States v. Stowell*, 133 U.S. 1, 16–17, 10 S.Ct. 244, 247, 33 L.Ed. 555 (1890); *Simons v. United States*, 541 F.2d 1351, 1352 (9th Cir. 1976). This right, however, must be "defined and consummated" by the judgment or decree of a court. *Confiscation Cases*, 74 U.S. (7 Wall.) 454, 461, 19 L.Ed. 196 (1898).

Ordinarily, of course, the Constitution demands that a person not be deprived of his property without previously having been afforded notice of the proposed action and an opportunity to be heard. *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). "[E]xtraordinary situations," however,

**5.** The claimants in these proceedings are Albrecht and a California law firm which claims under an assignment executed by Albrecht approximately fourteen months after the seizure. Since the assignees' claim can be no better than the assignor's, we treat Albrecht as the sole claimant.

**6.** § 1602. Seizure; report to collector
It shall be the duty of any officer, agent, or other person authorized by law to make seizures of merchandise or baggage subject to seizure for violation of the customs laws, to report every such seizure immediately to the collector for the district in which such violation occurred, and to turn over and deliver to such collector any vessel, vehicle, merchandise, or baggage seized by him, and to report immediately to such collector every violation of the customs laws.
§ 1603. Same; customs officer's reports
Whenever a seizure of merchandise for violation of the customs laws is made, or a violation of the customs laws is discovered, and legal proceedings by the United States attorney in connection with such seizure or discovery are required, it shall be the duty of the appropriate customs officer to report promptly such seizure or violation to the United States attorney for the district in which such violation has occurred, or in which such seizure was made, and to include in such report a statement of all the facts and circumstances of the case within his knowledge, with the names of the witnesses and a citation to the statute or statutes believed to have been violated, and on which reliance may be had for forfeiture or conviction.
§ 1604. Same; prosecution
It shall be the duty of every United States attorney immediately to inquire into the facts of cases reported to him by customs officers and the laws applicable thereto, and if it appears probable that any fine, penalty, or forfeiture has been incurred by reason of such violation, for the recovery of which the institution of proceedings in the United States district court is necessary, forthwith to cause the proper proceedings to be commenced and prosecuted, without delay, for the recovery of such fine, penalty, or forfeiture in such case provided, unless, upon inquiry and examination, such United States attorney decides that such proceedings can not probably be sustained or that the ends of public justice do not require that they should be instituted or prosecuted, in which case he shall report the facts to the Secretary of the Treasury for his direction in the premises.

may justify a departure from this mandate and permit postponement of notice and opportunity for a hearing. *Id.* at 90, 92 S.Ct. 1983 [at 1999]. Seizure of property for forfeiture to the Government is such a situation. *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974); *United States v. One 1967 Porsche*, 492 F.2d 893 (9th Cir. 1974). In that situation, postseizure notice and hearing are justified by the facts that seizure is "directly necessary to secure an' important governmental or general public interest," that there is a "special need for very prompt action," and that seizure is initiated by "a government official responsible for determining, under the standards of a narrowly drawn statute, that it [is] necessary and justified in the particular instance." *Fuentes*, 407 U.S. at 91, 92 S.Ct. at 2000; *Calero-Toledo*, 416 U.S. at 678–80, 94 S.Ct. 2080 [at 2089–90]. We find these justifications adequately presented here.

■ While relieved of the necessity for a pre-seizure hearing, governmental officials in this area are not endowed with an unfettered discretion in choosing when to institute the requisite judicial proceedings. Due process requires that these proceedings be commenced with some promptitude. The Supreme Court has recognized this in the context of a seizure of obscene photographs under Section 305 of the Tariff Act of 1930, 19 U.S.C. § 1305(a), in *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971). The general applicability of this principle to seizure cases has been confirmed by this court, by our sister circuits, and by a number of the district courts. *United States v. 2,200 Paper Back Books*, 565 F.2d 566 (9th Cir. 1977); *United States v. One 1970 Ford Pickup*, 564 F.2d 864 (9th Cir. 1977); *Lee v. Thornton*, 538 F.2d 27 (2d Cir. 1976); *United States v. One (1) 1972 Wood, 19 Foot Custom Boat*, 501 F.2d 1327 (5th Cir. 1974); *States Marine Lines, Inc. v. Shultz*, 498 F.2d 1146 (4th Cir. 1974); *Sarkisian v. United States*, 472 F.2d 468 (10th Cir.), *cert. denied*, 414 U.S. 976, 94 S.Ct. 291, 38 L.Ed.2d 219 (1973); *United States v. One (1) Douglas A–26B Aircraft*, 436 F.Supp. 1292 (S.D.Ga.1977); *United States v. A Quantity of Gold Jewelry*, 379 F.Supp. 283 (C.D.Cal.1974); *United States v. One 1971 Opel G. T.*, 360 F.Supp. 638 (C.D.Cal.1973).

Forfeiture statutes which fail to impose an explicit obligation upon the Government to commence prompt judicial proceedings have been construed to require administrative and judicial action within specific time limits in order to avoid a finding of facial unconstitutionality. *United States v. Thirty-Seven Photographs, supra*, 402 U.S. at 368, *et seq.*, 91 S.Ct. 1400 [at 1404]; *Lee v. Thornton, supra*, 538 F.2d at 31; *States Marine Lines Inc. v. Shultz, supra*, 498 F.2d at 1155; *Sarkisian v. United States, supra*, 472 F.2d at 472.

The time which elapsed between seizure and filing of suit in the instant case is about the same as that involved in *Ivers*, approximately eighteen months. In *Ivers*, the court found that the delay did not violate the due process rights of the claimant because the claimant's own conduct was such as to excuse and justify the government's delay.

■ We conclude that the delay here was justified by other reasons (a continuing investigation of claimant and others for other possible offenses), and as an alternative basis for our judgment we hold that his plea of guilty to a crime encompassing all of the facts which justify the forfeiture bars claimant from raising the due process issue.

After he was taken into custody, the Customs Service initiated an investigation of Albrecht in order to obtain evidence for use in the prosecution of the violations for which he was arrested as well as possible further charges, including violation of 31 U.S.C. 1059(1).

After his guilty plea, the investigation of Albrecht continued. In December of 1979, witnesses appeared before a Grand Jury; the parties stipulated that the investigation is still ongoing. However, the claimants

deny that the continuation of an investigation as to other possible violations has any relevancy to these proceedings. We disagree.

During the entire period from the date Albrecht pleaded guilty to the date the forfeiture proceeding was filed, serious investigation of possible further criminal activity by him and others was being conducted by the government. The filing of civil forfeiture proceedings during that period could have jeopardized other prosecutions against Albrecht and could have adversely affected the investigation. That such a good faith investigation was pending must be considered as a factor in the delay in instituting this forfeiture proceeding.

Finally, we hold that when a claimant to property seized without a hearing is prosecuted promptly and pleads guilty to committing every act which the government would have to prove in a civil forfeiture proceeding, he is barred from claiming the seized property, where the sole basis for his claim is that the civil forfeiture proceedings were not instituted promptly. Whether founded upon statute, regulation, or a judicial due process basis, a requirement that a seizure without notice or hearing be followed by a prompt judicial forfeiture proceeding serves only one purpose: to permit claimants a reasonable opportunity to assert the invalidity of the seizure. There is no such purpose to be served when the only claimant has judicially confessed to every fact necessary to justify the seizure. Indeed, Albrecht continues in these proceedings to admit judicially that the seizure was proper and that, but for the delay, so too would be the forfeiture.