USCA1 Opinion

 

 June 30, 1992 [NOT FOR PUBLICATION] ____________________ No. 91-2292 JOSE ROSADO-ACHA, Plaintiff, Appellant, v. WILLIAM J. SNYDER, DIRECTOR, THE DRUG ENFORCEMENT ADMINISTRATION, AND FOUR THOUSAND DOLLARS IN UNITED STATES CURRENCY, Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Gilberto Gierbolini, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge ___________ Selya and Cyr, Circuit Judges. ______________ ____________________ Jose Rosado-Acha on brief pro se. ________________ Daniel F. Lopez-Romo, United States Attorney, and Miguel A. ______________________ __________ Fernandez, Assistant United States Attorney, on brief for appellees. _________ ____________________ ____________________ Per Curiam. Plaintiff Jose Rosado Acha brought suit ___________ seeking the return of $4,000 that had been administratively forfeited by the Drug Enforcement Administration (DEA). Plaintiff challenged the forfeiture on due process grounds, alleging that he had been given inadequate notice of the administrative proceeding. Without ruling on this issue, the district court granted summary judgment to defendants on the ground that the currency was properly subject to forfeiture. As we find the evidence insufficient to support this conclusion in the summary judgment context, we reverse and remand for further proceedings. I. While the evidentiary record, as discussed infra, is _____ less than fully developed, the following facts are undisputed. On January 28, 1988, plaintiff was arrested by Puerto Rico authorities on an outstanding warrant for failure to appear for sentencing in a narcotics case in federal court. Another narcotics case was then pending against him in Puerto Rico Superior Court. In his possession at the time of arrest were two bundles of United States currency totalling $4,000 and $3,022, respectively.1 Both plaintiff and the currency were turned over to federal officials. ____________________ 1. As reflected in a property receipt provided by the State Police (attached to plaintiff's complaint), the $4,000 bundle contained the following denominations: two 100-dollar bills, 39 "fifties," 86 "twenties," ten "tens," and six "fives." -2- Plaintiff was remanded without bail to the Rio Piedras State Penitentiary, and he remained there following his sentencing in federal court on February 29, 1988. The DEA then commenced measures to forfeit the seized currency pursuant to 21 U.S.C. 881(a)(6). That provision authorizes forfeiture of all moneys "furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys ... used or intended to be used to facilitate any violation of this subchapter." With respect to the $4,000, the DEA on March 4, 1988 sent notices of seizure to plaintiff's last two known addresses: his home and the state penitentiary. These notices described the procedure for contesting the forfeiture, as well as that for seeking remission or mitigation. The notice mailed to plaintiff's home was returned "unclaimed"; the one sent to the penitentiary was returned with the notation "addressee unknown."2 The DEA also published notice of the $4,000's seizure in a newspaper ____________________ 2. The DEA likewise mailed identical notices with respect to the $3,022. Plaintiff acknowledges that he did receive this notice at the penitentiary. Plaintiff filed no objection to the forfeiture of the $3,022, and has raised no challenge thereto in this action. The instant appeal is concerned solely with the forfeiture of the $4,000. -3- of general circulation on April 20, 1988.3 Having received no response from plaintiff, the DEA administratively forfeited the $4,000 (along with the $3,022) on June 1, 1988. In the meantime, plaintiff's mother, acting on his behalf, moved on March 31 in the underlying federal criminal case for return of the $4,000. She stated that she had given her son $5,000 in November 1987 to pay attorney's fees in connection with the pending criminal case in Superior Court-- money which she had borrowed from a local bank on August 13, 1987. Her implication was that the seized currency derived from this loan. The government opposed the motion on April 7, contending that the money was connected to plaintiff's drug activities; it made no mention of the proposed forfeiture. After the June 1 forfeiture had occurred, however, the government relied on this fact to argue that the district court lacked jurisdiction to entertain the motion. The court agreed and denied relief, while noting that plaintiff "may have an action for declaratory and equitable relief against the United States for return of property under the Fifth Amendment due process clause and federal question jurisdiction," citing Willis v. United States, 787 F.2d 1089, ______ _____________ 1092-93 (7th Cir. 1986). ____________________ 3. Whether such notice was published for at least three successive weeks, as required by statute, see 19 U.S.C. ___ 1607(a); 21 C.F.R. 1316.75(a), is unclear from the present record. -4- Plaintiff filed just such an action in April 1990, seeking return of the $4,000 on the ground that notice of the administrative forfeiture was violative of due process. In his pleadings, plaintiff relied on the statutory mandate, applicable in this context, that "[w]ritten notice of seizure together with information on the applicable procedures shall be sent to each party who appears to have an interest in the seized article." 19 U.S.C. 1607(a) (made applicable to forfeitures under 21 U.S.C. 881(a) by virtue of 21 U.S.C. 881(d)). And he relied on Supreme Court pronouncements that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." Mullane v. Central Hanover Bank & Trust Co., _______ ________________________________ 339 U.S. 306, 314 (1950); see also Robinson v. Hanrahan, 409 ________ ________ ________ U.S. 38, 40 (1972) (per curiam) (when state knew that appellant was incarcerated, sending notice of forfeiture action to his home address violated due process). Plaintiff contended that, given the DEA's awareness of his incarceration, its failure to take further steps once the notice mailed to the penitentiary was returned with the notation "addressee unknown" contravened due process. The government responded by moving for summary judgment on this issue, arguing that it had made a good faith effort to provide written notice and that it was under no constitutional obligation to ensure that such notice actually -5- be received. Plaintiff opposed this motion and filed a cross-motion "for equitable relief in the form of a declaratory judgment." The district court called for further briefing "regarding the merits of plaintiff's claim that these funds were not the proceeds of drug money." The government responded with a two-page memorandum, unaccompanied by supporting affidavits or other evidence. It argued that plaintiff's effort to connect the $4,000 to money allegedly received from his mother was unpersuasive; no corroborating evidence had been offered, and five months had elapsed between receipt of the alleged bank loan and the seizure. And it contended, without elaboration, that plaintiff had been in "constructive possession" of approximately 500 grams of cocaine at the time of his arrest.4 Given this fact, and given that plaintiff had been prosecuted in both federal and state court for narcotics offenses, a "very strong inference" arose that the $4,000 were connected to plaintiff's "drug trafficking activities." In his reply, plaintiff submitted ____________________ 4. The government had advanced this assertion earlier. In an unsworn statement of "uncontested material facts" submitted in conjunction with its summary judgment motion, the government stated: "At the time of his arrest, Rosado Acha was in possession of approximately 500 grams of cocaine." Plaintiff, in his initial opposition to this motion, did not contest this assertion; his arguments were directed to the adequacy of the notice. Plaintiff first disputed this statement in his response to the court's call for supplemental briefing. -6- an affidavit from his mother documenting the above-described representations concerning the $5,000 loan to cover attorney's fees. He added in this regard that only two months elapsed between the time he received this money and his arrest. And plaintiff disputed that he was in actual or constructive possession of cocaine at the time of his arrest. He had been arrested while driving in the Santurce area, whereas the "500 grams of cocaine were allegedly seized as a result of a completely unrelated and illegal search ... upon certain premises located at Isla Verde." No evidence, he asserted, had been adduced connecting him to such premises. The district court, after surveying these responses, deemed the government's position "well taken." Without addressing the issue of notice, it held that "the $4,000 found in claimant's person while he was in possession of 500 grams of cocaine was connected to drug trafficking activities and subject to forfeiture." On that basis, it granted judgment for the government. II. Plaintiff first contends that the district court erred in addressing the propriety of the forfeiture. His specific claim is that the court lacked jurisdiction to do so in the context of an equitable action seeking return of forfeited property because of a due process violation. He suggests, more generally, that the forfeiture issue is irrelevant to -7- the constitutional claim, and that the district court's decision unfairly afforded the government a second bite of the apple. We see no jurisdictional bar to the court's consideration of the forfeiture. Plaintiff points to general statements in the case law to the effect that "federal courts lack jurisdiction to review the merits of a forfeiture decision that the Secretary has reached in the exercise of his discretion." In re $67,470, 901 F.2d 1540, 1543 (11th ______________ Cir. 1990). Yet the district court here did not conduct such a "review." In fact, there was no exercise of agency discretion to review; the administrative forfeiture was ordered due to the absence of objection by interested parties. And as plaintiff concedes, the district court possessed jurisdiction under 28 U.S.C. 1331 and the waiver of sovereign immunity contained in 5 U.S.C. 702. See, ___ e.g., Marshall Leasing, Inc. v. United States, 893 F.2d 1096, ____ ______________________ _____________ 1098-1102 (9th Cir. 1990); United States v. Mosquera, 845 ______________ ________ F.2d 1122, 1126 (1st Cir. 1988) (per curiam); Willis v. ______ United States, 787 F.2d at 1092-93. _____________ Nor are we persuaded that the forfeitability of the currency is irrelevant in an equitable action seeking its return due to constitutional violations. In analogous contexts involving allegedly deficient notice of forfeiture proceedings, courts have not deemed such an inquiry inappropriate. See, e.g., Vance v. United States, 676 F.2d ___ ____ _____ _____________ -8- 183, 187 (5th Cir. 1982) (agreeing, under "irregular" circumstances, to convert equitable action into judicial forfeiture proceeding); Fisher v. Stutman, 1987 WL 20223, *2 ______ _______ (D. Mass. 1987) (finding administrative forfeiture invalid due to inadequate notice, but proceeding to entertain subsequently filed judicial forfeiture; property ordered forfeited); Winters v. Working, 510 F. Supp. 14, 17 (W.D. _______ _______ Tex. 1980) (finding forfeiture proceeding invalid due to lack of notice; "[a]ssuming arguendo that the plaintiff has the ________ burden of also establishing [that forfeiture was unwarranted], she has sustained her burden"). Cf. Cepulonis ___ _________ v. United States, 543 F. Supp. 451, 453-54 (E.D.N.Y. 1982) ______________ (action under 28 U.S.C. 1346(a)(2) for damages; although notice of forfeiture was inadequate, only nominal damages awarded since vehicle was properly forfeited). As this issue was not addressed by the district court nor briefed by the parties, and as a remand is necessary in any event, we are reluctant at this point to explore it further. It suffices to note our disagreement with plaintiff's contention that the forfeitability of the currency is irrelevant per se to the instant action. We part company with the district court over the sufficiency of the evidence demonstrating that the $4,000 was subject to forfeiture. The framework for civil forfeiture proceedings is well-established. The government must -9- initially show probable cause to believe that the property was connected to illegal drug activity. See, e.g., United ___ ____ ______ States v. One Parcel of Real Estate (Great Harbor Neck), 960 ______ _____________________________________________ F.2d 200, 204 (1st Cir. 1992) (must show "required nexus"); United States v. Parcel of Land (28 Emery St.), 914 F.2d 1, _____________ ______________________________ 3-4 (1st Cir. 1990) ("substantial connection"). "Probable cause to forfeit requires only a 'reasonable ground for belief ... supported by less than prima facie proof but more than mere suspicion' that the property is subject to forfeiture." Id. at 3 (quoting United States v. $250,000 in ___ _____________ ___________ United States Currency, 808 F.2d 895, 897 (1st Cir. 1987)). ______________________ Once probable cause is shown, the burden shifts to the claimant to prove by a preponderance of the evidence that the currency was not connected to drug activity. See, e.g., ___ ____ Great Harbor Neck, 960 F.2d at 204. Our review of the ___________________ finding of probable cause is plenary, id. at 206 n.2, as is ___ of course our overall review in the summary judgment context, id. at 204. ___ Viewing the record in the light most favorable to plaintiff, and "indulging all reasonable inferences in [his] favor," Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. ___________ _____ 1990), we find the showing of probable cause insufficient to support summary judgment. The entirety of the government's proof consists of the following: plaintiff's two prosecutions for narcotics offenses, and his alleged constructive -10- possession of cocaine at the time of his arrest. As to the latter assertion, the government has adduced no evidence whatsoever. From plaintiff's pleadings, it appears that the cocaine was seized at a private residence in Isla Verde. And the record indicates that the forfeiture notice allegedly mailed to plaintiff's home (which was returned "unclaimed") was sent to an address in Isla Verde. Beyond this, the record is silent. Absent some evidence documenting where and when the cocaine was found and how plaintiff was connected thereto, this assertion contributes nothing to the probable cause determination. That plaintiff was twice convicted of narcotics offenses is undisputed (the record shows that he entered a guilty plea in Superior Court). Again, however, the record is otherwise silent. The government's assertion that plaintiff was involved in drug "trafficking" is unsupported; the nature of these offenses, the dates on which they occurred, and the type of drugs involved are all unknown. As such, it would be speculative to infer that the forfeited currency derived from drug sales. While the government has not mentioned this fact, the denominations of the currency found on plaintiff, see note 1 supra, admittedly invite suspicion. Yet absent ___ _____ some evidence as to the nature of plaintiff's drug activities, nothing more than suspicion can be drawn from -11- this circumstance. And "mere suspicion" is not enough to establish probable cause. $250,000, 808 F.2d at 897. ________ For these reasons, we find the government's evidence insufficient to "create a necessary connection between the property and drug trafficking." 28 Emery St., 914 F.2d at 6 ____________ (reversing grant of summary judgment); accord, e.g., United ______ ____ ______ States v. $80,760 in United States Currency, 781 F. Supp. 462 ______ _________________________________ (N.D. Tex. 1991) (denying summary judgment due to insufficient proof of probable cause). Vacated and remanded for further proceedings. _____________________________________________ -12-